46 Cal.App.3d 138 (1975)
120 Cal. Rptr. 35
RONALD GUNDERSON, a Minor, etc., et al., Petitioners,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; ANTELOPE VALLEY MEDICAL CLINIC, INC., et al., Real Parties in Interest.
Docket No. 45467.
Court of Appeals of California, Second District, Division Four.
March 17, 1975.
*140 COUNSEL
Pollock, Pollock & Fay and Robert S. Schlifkin for Petitioners.
Robert E. Cartwright, William H. Lally, Stephen I. Zetterberg, Robert G. Beloud, Ned Good, David B. Baum, Arne Werchick, Elmer Low and Leonard Sacks as Amici Curiae on behalf of Petitioners.
No appearance for Respondent.
Fidler & Bell and Michael A. Bell for Real Parties in Interest.
OPINION
KINGSLEY, J.
Petitioners brought a malpractice suit against the real parties in interest[1] and two other defendants. As the case was proceeding, the respondents sought an order under Code of Civil Procedure section 1281.2, subdivision (a), to compel arbitration pursuant to a signed agreement, which the trial court granted. Petitioners seek a writ of mandate from this court to reverse the orders compelling arbitration and to allow the suit ultimately to proceed to trial.[2]
*141 On November 15, 1972, Diane Drake, mother and guardian ad litem of the minor petitioner, brought him to the office of the Antelope Valley Medical Clinic in Lancaster, California for medical treatment. At the receptionist's desk, Mrs. Drake was handed a standardized form by one of the clinic's employees. She was requested to fill out the form and sign it at the bottom of the page, which she did. The form asked for such information as name, address, employer, phone number, whether the patient was insured and, if so, by whom. Below these blanks, about two-thirds of the way down the page, were two paragraphs preceded by the phrase "Treatment and Arbitration Agreement."
The first paragraph provided that the patient agrees to cooperate fully with the "attending physician" in such matters as medications, prescribed regimen, and by paying all fees and charges as billed. The second paragraph, and the one which is at the heart of this dispute, provides in part as follows:
"In the event of any controversy between the PATIENT or a dependent (whether or not a minor) or the heirs-at-law or personal representative of a patient, as the case may be, and the ATTENDING PHYSICIAN (including its agents and employees), involving a claim in tort or contractual, the same shall be submitted to arbitration. Within fifteen (15) days after the PATIENT or ATTENDING PHYSICIAN shall give notice to the other of demanding arbitration of such controversy, the parties to the controversy shall each appoint an arbitrator and give notice of such appointment to the other.... THE PATIENT may withdraw from this agreement within 30 days from the above date by notification of his intent to do so to the ATTENDING PHYSICIAN by registered mail."
On the same page, just below these two paragraphs were spaces for the date and the signature of the patients which had been marked with an "X" and had been signed by Mrs. Drake as requested.
One year after this visit, on November 28, 1973, petitioners filed an action in the superior court alleging malpractice against the Antelope Valley Medical Clinic, Inc., H.E. Kicenski, M.D., Neil G. Barbour, M.D., Harvey Birsner, M.D., and Lancaster Community Hospital, of which the first three are the real parties in interest in the matter at bench. Petitioners filed a first amended complaint for damages on December 7, 1973, an answer to which was filed on January 31, 1974, by the *142 respondents. In this answer, no mention was made of the existence of or intent to place reliance on any arbitration agreement. It is alleged in the petition for the order appealed from that a demand for arbitration was made on February 25, 1974, but that petitioner refused.[3] Until May 15, 1974, no further demand for arbitration was made. In the meantime, both sides participated in discovery.
Discovery on the part of petitioners consisted of filing and serving one set of interrogatories to each of the named defendants. These interrogatories were all sent on March 7, 1974.
Discovery on the part of the respondents began, however, much earlier. On January 30, 1974, the same day that they filed their answer to the first amended complaint, the clinic filed and served interrogatories on petitioners. Significantly, these came almost one month before the respondents initially asked for arbitration. Answers to these interrogatories were sent on March 13, 1974.[4]
On April 25, 1974, a full two months after the initial demand for arbitration, the defendants also took the deposition of petitioner Diane Drake.
Just prior to the deposition, petitioners had filed an at-issue memorandum with the superior court. At no time have the respondents attempted to strike this motion as premature. In fact, it was not until May 15, 1974, that they petitioned for an order compelling arbitration. After hearing arguments on August 7, 1974, the trial judge ultimately granted the petition to compel, and it is this order that petitioners seek to overturn by way of a writ of mandate.
In this petition for writ of mandate, petitioners have made two arguments. First, they assert that the respondents have, by their failure to plead the arbitration agreement as an affirmative defense or raise it as a plea in abatement in their answer, waived their right to compel this dispute to go to arbitration. In further support of this argument, petitioners argue that even if the failure to plead it in the answer is not a full waiver of the right, the respondents have actively litigated the matter to a point where they should be estopped from asserting the right.
*143 Second, petitioners contend that the arbitration agreement is invalid and unenforceable as it does not represent the mutual assent of the parties, that it is violative of public policy, and is a contract of adhesion. For the reasons set forth below, we find that there has been a waiver and thus do not reach the second issue.
The initial problem in the case at bench is whether the respondents waived their right to compel arbitration through their failure to plead the right in their answer and by their failure to petition the court to compel arbitration until six months after the complaint was filed.
(1) The generally stated rule is that whether there has been a waiver of arbitration rights is a question of fact for the trial court. (Tas-T-Nut Co. v. Continental Nut Co. (1954) 125 Cal. App.2d 351, 355 [270 P.2d 43]; Daugherty Co. v. Kimberly-Clark Corp. (1971) 14 Cal. App.3d 151, 158 [92 Cal. Rptr. 120]; Martinez Typographical Union v. Silversun Corp. (1967) 256 Cal. App.2d 255, 260 [63 Cal. Rptr. 760].) But if the record before the superior court establishes that there was waiver as a matter of law, the appellate court may conclude that it was an abuse of discretion to stay the civil action and to compel the parties to arbitrate and it may reverse the order of the trial court. (Bertero v. Superior Court (1963) 216 Cal. App.2d 213, 219-220 [30 Cal. Rptr. 719]; Zak v. State Farm etc. Ins. Co. (1965) 232 Cal. App.2d 500, 508 [42 Cal. Rptr. 908].) (2a) In the present matter, we are compelled by the record to find that there was a waiver of the right.
(3) Arbitration is a recognized and favored means by which parties expeditiously and efficiently may settle disputes which might otherwise take years to resolve. (Federico v. Frick (1970) 3 Cal. App.3d 872, 876 [84 Cal. Rptr. 74]; Lesser Towers, Inc. v. Roscoe-Ajax Constr. Co. (1969) 271 Cal. App.2d 675, 693 [77 Cal. Rptr. 100].) But this right may be lost, as any contractual right which exists in favor of a party may be lost through a failure properly and timely to assert the right. A right to compel arbitration is not, unless expressly provided for in the agreement, self-executing. If a party wishes to compel arbitration, he must take active and decided steps to secure that right, and is required to go to the court where plaintiff's action lies. (Local 659, I.A.T.S.E. v. Color Corp. Amer., 47 Cal.2d 189, 194-195 [302 P.2d 294]; Publicists Local 818 v. National Screen Service Corp., 183 Cal. App.2d 491, 497 [7 Cal. Rptr. 238].) In other words, a right to arbitrate may be waived. (Code Civ. Proc. § 1281.2, subd. (a); Sawday v. Vista Irrigation Dist., 64 Cal.2d 833, 836 [52 Cal. Rptr. 1, 415 P.2d 816]; Commercial Ins. Co. v. Copeland *144 (1967) 248 Cal. App.2d 561, 564-565 [56 Cal. Rptr. 794]; Gustafson v. State Farm Mut. Auto. Ins. Co. (1973) 31 Cal. App.3d 361 [107 Cal. Rptr. 243].)
(4) It is clear that a waiver occurs when a party brings suit without seeking arbitration (Berman v. Renart Sportswear Corp. (1963) 222 Cal. App.2d 385 [35 Cal. Rptr. 218]), or when a party files a counterclaim (Case v. Kadota Fig Assn. (1950) 35 Cal.2d 596 [220 P.2d 912]), or where a contract provides that the demand must be brought within a stated time. (Winchester v. North British etc. Co., 160 Cal. 1, 6 [116 P. 63].) But the question remains: when does the defendant lose the right through inaction?
It has been held that to wait five years before demanding arbitration was too long (Pacific Indem. Co. v. Superior Court (1966) 246 Cal. App.2d 63 [54 Cal. Rptr. 470]); that three years was too long (Brunzell Constr. Co. v. Harrah's Club (1967) 253 Cal. App.2d 764, 778 [62 Cal. Rptr. 505]); and that two years was too long. (Aetna Cas. & Surety Co. v. Superior Court (1965) 233 Cal. App.2d 333, 339 [43 Cal. Rptr. 476].) We do not know, however, of any California case which considered a time frame similar to the one at hand.
(5) Usually a defendant to a dispute who wishes to assert the argument of arbitration will include it as an affirmative defense in the answer by way of abatement of an action prematurely brought. (Ross v. Blanchard, 251 Cal. App.2d 739, 742 [59 Cal. Rptr. 783]; Northcutt Lumber Co. v. Goldeen's Peninsula, Inc. (1973) 30 Cal. App.3d 440, 444 [106 Cal. Rptr. 353].) This is a recognized, fully effective and proper means by which a party may force a dispute out of the courts and before an arbitrator (Kustom Kraft Homes v. Leivenstein, 14 Cal. App.3d 805, 811 [92 Cal. Rptr. 650]). (2b) But the respondents here chose not to include this defense in their answer.
In addition to their failure to plead the arbitration clause in their answer, and in addition to the delay in seeking to enforce the clause by petition under section 1281.2 of the Code of Civil Procedure after the plaintiff had refused arbitration, the conduct of the respondents was clearly inconsistent with any real intent to arbitrate.
The agreement provides that, within 15 days after respondents made their February 25th demand, they should have designated their arbitrator. This they did not do. Impliedly, by that omission, they accepted the refusal.
*145 We hold that respondents waived their right to compel arbitration and therefore do not reach the second issue. The alternative writ of mandate of January 27, 1975, is hereby discharged. Let the peremptory writ of mandate issue ordering the superior court to vacate its order to arbitrate of August 5, 1974, and its order staying proceedings of the same date and enter a new order denying the petition to compel arbitration.
Jefferson, Acting P.J., and Dunn, J., concurred.
A petition for a rehearing was denied April 1, 1975.
NOTES
[1] Hereinafter referred to simply as Respondents for simplicity only.
[2] We issued our alternative writ; the matter has been briefed and argued. The issuance by us of the alternative writ is a binding determination that this is one of the cases in which an order directing arbitration may be reviewed by perogative writ. (5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 94, p. 3870.)
[3] This allegation was not denied by petitioners and thus constitutes the fact under Code of Civil Procedure, section 1290.
[4] Answers were similarly sent two days later to Harvey Birsner, M.D., who had filed his interrogatories as early as January 24, 1974. It should be noted, however, that defendant Birsner is not a real party in interest in the case at bench.