[Nos. H020624, H020921. Sixth Dist. Nov. 15, 2000.]

C. STEPHEN JOHNSON, Plaintiff and Appellant, v.
HOWARD SIEGEL et al., Defendants and Respondents.

COUNSEL

Bernd W. Schmidt and M. Jean Starcevich for Plaintiff and Appellant.

Baskin & Grant and David Green Baskin for Defendants and Respondents.

OPINION

WUNDERLICH, J.—After C. Stephen Johnson's new home flooded during a rainstorm, he filed an action against the sellers of the home, alleging that they had intentionally and negligently failed to disclose flooding and drainage problems on the property. The sellers moved for summary judgment on the ground that Johnson had filed suit without initiating arbitration, as required by the parties' residential purchase agreement. The trial court granted the sellers' motion, judgment was entered, and this appeal followed. For reasons we shall explain, we affirm the granting of summary judgment. However, as we also explain, the granting of summary judgment does not

preclude Johnson from filing a petition to compel arbitration. Johnson also appeals from the trial court's order awarding attorney fees to the Siegels. We shall affirm that award.

FACTS

On July 16, 1998, Johnson offered to buy, and Howard and Diane Siegel agreed to sell, the property at 241 Aptos Beach Drive in Aptos for $475,000. The parties used a standard California Association of Realtors' Residential Purchase Agreement and Receipt for Deposit. The real estate purchase agreement provided at paragraph 6, entitled "TRANSFER DISCLOSURE STATE-MENT; NATURAL HAZARD DISCLOSURES; SUBSEQUENT DISCLOSURES; MELLO-ROOS NOTICE," that the sellers were to complete and deliver to the buyer "[w]ithin the time specified in paragraph 16A(1), if required by law, a Real Estate Transfer Disclosure Statement." Paragraph 15A(1) gave the seller five days from the date of the real estate purchase agreement to provide the required disclosures.

On July 21, 1998, the sellers provided Johnson with a standard California Association of Realtors' Transfer Disclosure Statement (TDS). The TDS stated in capital letters that it was a "DISCLOSURE OF THE CONDITION OF THE ABOVE DESCRIBED PROPERTY IN COMPLIANCE WITH SECTION 1102 OF THE CIVIL CODE." Section II, entitled "SELLER'S INFORMATION," provided: "THE FOLLOWING ARE REPRESENTATIONS MADE BY THE SELLER(S) AND ARE NOT THE REPRESENTATIONS OF THE AGENT(S), IF ANY. THIS INFORMATION IS A DISCLOSURE AND IS NOT INTENDED TO BE PART OF ANY CONTRACT BETWEEN THE BUYER AND SELLER." The form went on to ask the sellers whether they were aware of any problems in 16 specified areas, including drainage, flooding, grading problems, slippage, and soil problems. The sellers checked "no" in every box on the form.

The real estate purchase agreement also included a dispute resolution provision at paragraph 21, which contained an agreement in subsection B to arbitrate "any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation."

Escrow apparently closed in August 1998, and Johnson moved into the home. Just a few months later, in January 1999, the rains began and, according to Johnson, his home suffered flooding reminiscent of Angela's

Ashes.[1] Although he attempted to save his house by piling up sandbags, water still entered the living room every time it rained, ruining furniture, carpets, and carpet pads. It also flooded his garage. As a result, Johnson was forced to leave part of his house vacant.

Johnson arranged a meeting with the sellers in late February 1999. At that time, Howard Siegel allegedly confessed that he had had to use sandbags whenever it rained to prevent flooding. The flooding, Siegel explained, was a result of roadwork the County of Santa Cruz (County) had done in 1994 on Aptos Beach Drive. Siegel suggested that they both sue the County. An uphill neighbor, whose property has also flooded since the County's improvements, signed a declaration stating that he saw Siegel sandbagging the side of his house and around his driveway whenever it rained. Siegel had told the neighbor that records and antiques he had kept in his garage were ruined because of the flooding and he suggested that the neighbor join him in suing the County.

Johnson wrote several letters to Siegel and his attorney in February and March 1999, asking to rescind the purchase agreement. He did not ask for mediation or arbitration in these letters. The Siegels responded, turning down Johnson's rescission request; they did not point out, however, that pursuant to the real estate purchase agreement, the parties were to mediate any conflicts, and if that did not resolve the dispute, then they were to arbitrate.[2]

In May 1999, Johnson filed suit, seeking rescission of the purchase agreement and damages for fraud and negligent misrepresentation. The suit was served on the Siegels in June 1999. On July 22, 1999, the Siegels filed a general denial, which included several affirmative defenses, and simultaneously a motion for summary judgment. The motion was based on the Siegels' 14th affirmative defense, which "allege[d] that Paragraph 21.B of the written purchase/sale agreement sued on by Plaintiff requires that plaintiff and defendants arbitrate each and every controversy that is at issue in this action. Defendants have not waived arbitration but plaintiff has at all times failed and refused to arbitrate the controversy and has made no attempt

---

[1]Angela's Ashes (1996) is Frank McCourt's memoir of his years growing up in poverty in Ireland. During rainy seasons, the McCourt family had to live upstairs because the downstairs was flooded.

[2]Paragraph 21.A provided that "Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action, . . ." Paragraph 21.B provided that "Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration."

to submit the matter to arbitration. The matter has not been arbitrated. Arbitration is a condition precedent to commencement and maintenance of this action and the action is barred by the failure of Plaintiff to attempt to submit the matter to arbitration."

Johnson opposed the motion for summary judgment on the ground that the misrepresentations that formed the basis of his lawsuit were found in the TDS, which as noted above stated: "THIS INFORMATION IS A DISCLOSURE AND IS NOT INTENDED TO BE PART OF ANY CONTRACT BETWEEN THE BUYER AND SELLER." He argued that if it was not part of the contract between the buyer and seller that contained the arbitration clause then it was not subject to the arbitration clause. He also argued that if the matter was arbitrable, the proper course would be to stay the action pending arbitration.

At the hearing on the motion, the trial court expressed its concern that if it granted summary judgment, "[t]here [would be] no remedy" for Johnson. The court therefore announced, "Here's what I'd be inclined to do [—] order the parties to arbitration and stay the proceedings until they complete the arbitration." The Siegels protested, arguing that the trial court was required to follow California Supreme Court precedent and that it "is the public policy in the state of California, and that policy is so strong that a plaintiff who violates it is thrown out of court, period. And we are entitled to that remedy."

The court took the matter under submission and on September 1, 1999, issued an order granting summary judgment based on Johnson's failure to initiate arbitration.

Just two days after the court's ruling, Johnson notified the Siegels' attorney that he was requesting arbitration pursuant to the contract terms. The Siegels responded, "The request is rejected. There is no right to seek arbitration following the court's ruling granting summary judgment. [¶] . . . [¶] . . . [Judge Yonts's] ruling granted judgment in the matter, terminating the controversy between our clients in favor of the Siegels. As a result, any further action is barred by fundamental principles of res judicata. . . . 'A judgment entered after granting a motion for summary judgment is as final and conclusive a determination of the merits as a judgment after trial.' . . . [¶] In short, your request for arbitration is simply folly which, by forcing a response, has done nothing but increase the attorneys' fees for which Mr. Johnson will be liable . . . . [¶] . . . [¶] Be notified that should you pursue this matter further by filing a Petition to Compel arbitration or a second lawsuit, it will be viewed as a malicious prosecution suit by Mr. Johnson and his counsel, and responded to accordingly. [¶] It is time for Mr. Johnson to

face the reality that the decision to institute the within litigation rather than initiate arbitration as required by the contract was ill advised, and that as a result, he has no further redress against the Siegels."

At that point, Johnson filed a motion for reconsideration, arguing that he had not waived his right to arbitrate. The court asked, "[I]f I deny the motion, doesn't plaintiff still have a remedy? [¶] . . . [¶] Can't he bring a new action to petition to compel arbitration since he's requested and you have denied it?" The Siegels' attorney responded, "No. He's barred by the rule of res judicata in that event. . . . [¶] . . . [¶] It's not a material fact, because having had a judgment ruled upon already, there is nothing left to arbitrate. The case is over. It's just a matter of presentation of the cost bill and the motion for attorney's fees." At that point, the court reluctantly denied Johnson's motion for reconsideration. This appeal followed.

## DISCUSSION

A. *Appeal from Summary Judgment (Case No. H020624)*

Johnson spends 40 pages of his 41-page opening brief arguing that the subject dispute is not covered by the arbitration clause in the real estate purchase agreement. For reasons we explain, we disagree. Our primary concern, however, is with the issue touched upon in the last page of Johnson's brief—the issue of what remedy is left to Johnson if the summary judgment is affirmed. As we shall explain, we disagree with the Siegels' interpretation of California precedents suggesting that Johnson is without remedy. This is an issue of first impression on facts similar to these, and the California cases upon which the Siegels rely are distinguishable.

1. *Is this dispute covered by the arbitration clause in the real estate purchase agreement?*

On appeal, Johnson argues (1) that the misrepresentations that form the basis of his lawsuit were contained in the TDS, which stated it was *not* a part of any contract; the TDS did not contain an arbitration agreement; (2) that there is no duty to arbitrate this matter because the contract containing the arbitration clause was rescinded by Johnson; (3) that the fraudulent conduct which formed the basis of Johnson's claims (the Siegels' filling out of the TDS on June 21, 1998) took place after the parties agreed to arbitrate on June 16, 1998; (4) that the Siegels waived their right to arbitrate by not mentioning the arbitration clause before suit was filed and by not agreeing to arbitrate after summary judgment was granted; and (5) that the primary case upon which the Siegels rely, *Charles J. Rounds Co. v. Joint Council of*

*Teamsters No. 42* (1971) 4 Cal.3d 888 [95 Cal.Rptr. 53, 484 P.2d 1397] (hereafter *Rounds),* is distinguishable.

The flaw in all of Johnson's arguments lies in the fact that the TDS was an integral part of the *real estate transaction,* even if it was not, by its terms, a part of the *real estate contract.* Paragraph 6.A of the residential purchase agreement and Civil Code section 1102 et seq. required the Siegels to provide Johnson with a TDS as a condition of the sale of the residential property.

The arbitration clause in the real estate purchase agreement is extremely broad. It provides that *"any* dispute or claim in Law or equity arising between [the buyer and seller] out of this Agreement *or any resulting transaction"* shall be arbitrated if the dispute has not been settled by mediation. Moreover, the arbitration clause is conspicuous. The clause is written in bold print, and the parties had to specifically initial the provision. The clause is clearly broad enough to encompass disputes arising from the TDS, which is a required part of the overall real estate transaction.

Regarding Johnson's argument that the fraudulent conduct which formed the basis of his claims (the filling out of the TDS on June 21, 1998) took place *after* the parties agreed to arbitrate on June 16, 1998, and therefore could not have been encompassed by the parties' arbitration agreement, we disagree. The arbitration agreement applied not only to the real estate purchase agreement but also to any *resulting transaction.* Thus, the parties contemplated that events that had not yet taken place would be included within the ambit of the arbitration clause.

Regarding Johnson's argument that there was no duty to arbitrate because the contract containing the arbitration clause was rescinded by Johnson, we also disagree. It is true that arbitration may be refused where grounds exist for revocation of the *agreement to arbitrate.* (Code Civ. Proc., § 1281; 9 U.S.C.A. § 2; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973 [64 Cal.Rptr.2d 843, 938 P.2d 903].) Fraud in the inducement of the *underlying contract,* however, is not sufficient to defeat an arbitration clause. ■ As the court explained in *Prima Paint v. Flood & Conklin* (1967) 388 U.S. 395, 403-404 [87 S.Ct. 1801, 1805-1806, 18 L.Ed.2d 1270], where there is an arbitration clause, courts may not consider "claims of fraud in the inducement of the contract generally." (Accord, *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323 [197 Cal.Rptr. 581, 673 P.2d 251].) This is because claims of fraud in the inducement are often intertwined with claims of contract breach. An arbitrator is competent and empowered to decide issues related to fraud in the inducement of the underlying contract. (*Id.* at p. 318.)

On the other hand, where it is claimed that fraud induced the entering into of the arbitration clause itself, the matter must be resolved by the court rather than the arbitrator. (*Engalla v. Permanente Medical Group, Inc., supra,* 15 Cal.4th at p. 973.) "[A] court can consider a claim that a party was fraudulently induced to include an arbitration clause in a contract, but not a claim that an entire contract was the product of fraud." (*Houlihan v. Offerman & Co., Inc.* (8th Cir. 1994) 31 F.3d 692, 695; see also *Moseley v. Electronic Facilities* (1963) 374 U.S. 167, 170-171 [83 S.Ct. 1815, 1817-1818, 10 L.Ed.2d 818].)

 Here, Johnson does not claim that he was fraudulently induced to enter into the *agreement to arbitrate.* As noted above, the arbitration clause was prominent, in bold type, and it was specifically called to his attention. Johnson had to place his initials on the paragraph to agree to its terms. What Johnson claims is that he was fraudulently induced to enter into the *underlying agreement* by representations that the property had no known flooding or drainage problems. That allegation is insufficient to defeat the arbitration agreement.

Finally, Johnson contends that the Siegels waived their right to arbitrate by not mentioning the arbitration clause before suit was filed and by not agreeing to arbitrate after summary judgment was granted. What happened after summary judgment, however, is not relevant to whether the court erred in granting summary judgment. In implicitly finding that the Siegels had not waived their right to arbitrate, the trial court reasonably could consider that the Siegels' first responses to Johnson's lawsuit—their general denial and motion for summary judgment—objected to Johnson's failure to initiate arbitration and stated, "Defendants have not waived arbitration."

We conclude that the dispute in this case is covered by the arbitration clause in the real estate purchase agreement. Johnson should have, but did not, initiate arbitration procedures. We now turn to the question of what sanctions are appropriate for this error.

2. *Should the trial court have granted summary judgment?*

 The Siegels rely on an almost 30-year-old California Supreme Court precedent, *Rounds, supra,* 4 Cal.3d 888, which they say entitles them to summary judgment and precludes *any further action* on the part of the plaintiff. We agree with the first proposition but disagree with the second. If *Rounds*'s holding were as sweeping as the Siegels assert, then *Rounds* would have been wholeheartedly embraced by the defense bar. It has not. It is not even cited in The Rutter Group's treatise on alternative dispute resolution.

(Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 1999) ¶¶ 1:1 to 8:159, pp. 1-1 to 8-31.) Every defendant —especially clearly liable defendants—could take advantage of a plaintiff who overlooked an arbitration agreement. None would file a petition to compel arbitration when they could obtain summary judgment and escape all liability.

The Siegels cite four cases for the proposition that a plaintiff who is subject to an arbitration agreement is left without a remedy whenever he or she files suit without first initiating arbitration. As we shall explain, none of these cases so hold.

The first and primary case cited by the Siegels is *Rounds*. In *Rounds*, an employer filed a complaint against the Teamsters Union for breach of the "no strike" clause in their collective bargaining agreement. The collective bargaining agreement also provided that " 'all grievances or disputes arising between [the parties] over . . . this Agreement shall be settled by [binding arbitration].' " (*Rounds, supra,* 4 Cal.3d at p. 892.) The union made three separate attempts in the trial court to force the employer into arbitration, but their efforts were unsuccessful. Approximately four years after the employer's lawsuit was filed, the union brought an action in the federal courts to compel arbitration, but that action was dismissed on laches and statutes of limitations grounds. Six years after the employer's suit was filed, it came to trial. The parties stipulated to try the special defense (that the dispute was covered by the arbitration agreement) first. Following trial on this defense, the trial court determined that the arbitration procedure was intended to cover all disputes, including the one before it. Accordingly, the trial court dismissed the lawsuit.

The California Supreme Court affirmed. In so doing, it made the following observations upon which the Siegels rely: "[W]here the only issue litigated is covered by the arbitration clause, and where plaintiff has not first pursued or attempted to pursue his arbitration remedy, it should be held that (1) plaintiff has impliedly waived his right to arbitrate, such that defendant could elect to submit the matter to the jurisdiction of the court; (2) defendant may also elect to demur or move for summary judgment on the ground that the plaintiff has failed to exhaust arbitration remedies; and (3) defendant may also elect to move for a stay of proceedings pending arbitration if defendant also moves to compel arbitration. Plaintiff may of course sue preliminarily to enforce its arbitration rights. [¶] Where plaintiff has attempted to exhaust its arbitration remedy or raises issues not susceptible to arbitration or not covered by the arbitration agreement, defendant may not merely assert failure to arbitrate an issue as an affirmative defense; a stay

rather than dismissal of the suit is then proper. Defendant must therefore demand arbitration if it seeks such a stay. [¶] In the instant case plaintiff at no time attempted to pursue its arbitration remedy. The no-strike clause was contractually subject to arbitration. The relief sought, damages, is traditionally within an arbitrator's power to award. [Citation.] Defendant until long after this suit was filed sought to compel arbitration, and asserted plaintiff's failure to arbitrate or seek arbitration as an affirmative defense." (*Rounds, supra,* 4 Cal.3d at p. 899.)

The Supreme Court went on in the next sentence—a sentence not quoted by the Siegels—to state, "*What remedies plaintiff may have to now compel arbitration must await assertion of that right.* Defendant was entitled to the dismissal." (*Rounds, supra,* 4 Cal.3d. at pp. 899-900, italics added.) In other words, the *Rounds* court left open the question of what remedies might be available to a plaintiff who had failed to initiate arbitration notwithstanding an agreement to arbitrate. *Rounds* does not support the Siegels' position that Johnson cannot bring a motion to compel arbitration.

On the facts in *Rounds*, we believe a trial court would likely conclude that the employer had waived any right to compel arbitration because of the delay involved (six years) and the employer's refusal to submit to arbitration after numerous demands by the defendant union. The facts in this case, in contrast, do not show similar dilatory conduct on plaintiff's part. The flooding took place in January 1999, and Johnson immediately attempted to arrange a rescission of the purchase directly with the Siegels, without resorting to mediation, arbitration or litigation. In their answer to his request, the Siegels did not remind Johnson of his obligation to arbitrate disputes under the contract. When the Siegels refused to rescind the contract, Johnson filed suit in May 1999 and served it in June 1999. The Siegels' first action was to simultaneously file a general denial and motion for summary judgment. Summary judgment was granted within six months of the flooding that first put Johnson on notice of the alleged fraud in the real estate transaction.

The Siegels also rely on *Gunderson v. Superior Court* (1975) 46 Cal.App.3d 138, 144 [120 Cal.Rptr. 35], disapproved on another ground in *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 185-186 [151 Cal.Rptr. 837, 588 P.2d 1261]; *Berman v. Renart Sportswear Corp.* (1963) 222 Cal.App.2d 385 [35 Cal.Rptr. 218]; and *Case v. Kadota Fig Assn.* (1950) 35 Cal.2d 596 [220 P.2d 912], all for the same proposition that "a waiver occurs when a party *brings* suit without seeking arbitration." (Original italics.) Each of those cases is distinguishable; each provided the defaulting party with a remedy; and none held that a grant of summary judgment would be res judicata, leaving nothing for an arbitrator to decide.

In *Gunderson v. Superior Court, supra,* 46 Cal.App.3d 138, the trial court granted the defendant medical provider's petition to compel arbitration, but the Court of Appeal reversed, issuing a writ to vacate the order to arbitrate. The appellate court concluded that the defendant had waived its right to compel arbitration by not pleading the arbitration clause in its answer, by delaying conduct and by other acts inconsistent with an intent to compel arbitration. In *Gunderson* the plaintiff did not lose a right to any forum by failing to invoke the arbitration clause. He was permitted to pursue his lawsuit. *Gunderson* does not support the Siegels' position that Johnson has no remedy available.

In *Berman v. Renart Sportswear Corp., supra,* 222 Cal.App.2d 385, the trial court denied the defendant's petition to compel arbitration on the ground the petitioner had failed to establish that there was an agreement to arbitrate. The Court of Appeal affirmed. Again, the plaintiff had a forum to address the merits of his claim. *Berman* does not support the Siegels' position that Johnson has forfeited his claim.

In *Case v. Kadota Fig Assn., supra,* 35 Cal.2d 596, the case went to trial (and therefore the plaintiff was not denied a hearing on the merits). The trial resulted in a defense verdict on the plaintiff's complaint and judgments against the plaintiff on the two defendants' cross-complaints. On appeal, the plaintiff pointed out for the first time that one of the two cross-complaints required arbitration. The court held that "by resorting to litigation, Case-Swayne waived any right it might have had to require the selection of an accountant to make a determination of any matter involving the 'computation or allocation of the costs' under its agreement with Yosemite." (*Id.* at p. 606.) Again, this case does not hold that a defendant who obtains summary judgment on the grounds that the plaintiff did not initiate arbitration is thereby relieved of any type of hearing on the merits.

The Siegels also rely on *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307 [24 Cal.Rptr.2d 597, 862 P.2d 158], for the proposition that "a party's failure to timely demand arbitration results in a contractual forfeiture of the right to compel arbitration." We agree with this proposition, but the key word in the last sentence is "timely." Where an arbitration agreement contains a prescribed time in which to initiate arbitration, the timely commencement of the arbitration process is a condition precedent to the right to arbitrate, and the failure to meet that requirement operates as a forfeiture of that right. In *Platt Pacific, Inc. v. Andelson,* the parties' contract required arbitration and provided that "if any party failed to cooperate in the filing of a joint demand for arbitration, the failure to cooperate would be a breach of the agreement and the other party could file a demand for arbitration, '*but in*

*no event shall such a demand be filed later than August 31, 1989.' " (Id.* at p. 311, original italics.) The court held that the plaintiff's October 30, 1989 demand for arbitration was too late and resulted in a forfeiture.

Another case denying the plaintiff a remedy where there was a deadline for demanding arbitration and the plaintiff let the deadline pass is *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1216 [78 Cal.Rptr.2d 533].[3] In that case, the plaintiff alleged she was constructively discharged from her employment due to sexual harassment on July 3, 1995. Her written arbitration agreement with her employer provided that " '[t]o start the arbitration process, either party must submit a written arbitration request to the other, within one (1) year of the date the dispute first arose or within one (1) year of the termination of your employment, whichever occurs first. . . .' " *(Id.* at p. 1205.) The plaintiff did not initiate arbitration by July 3, 1996, and instead "expressly repudiated the arbitration agreement: 'plaintiffs [*sic*] are knowingly waiving their right to arbitrate, and are not reversing their positions.' " *(Id.* at p. 1206.) The court held that the parties' dispute was subject to their arbitration agreement and that plaintiff had waived her right to compel arbitration by not making a timely demand. The court noted, "We recognize the result of our decision here is that Munshaw has no avenue for recourse against Nautilus, Rodriguez, Harmon or Cunningham. This consequence flows from her decision to repudiate the arbitration agreement." *(Id.* at p. 1216, fn. 12.)

■ Where, as here, no deadline for demanding arbitration is specified in the agreement, the courts allow a *reasonable* time. A party who does not demand arbitration within a reasonable time is considered to have waived the right to arbitrate. *(Spear v. California State Auto Assn.* (1992) 2 Cal.4th 1035, 1043 [9 Cal.Rptr.2d 381, 831 P.2d 821]; *Allstate Ins. Co. v. Gonzalez* (1995) 38 Cal.App.4th 783, 790-793 [45 Cal.Rptr.2d 491]; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, *supra,* ¶¶ 5:174 to 5:178, pp. 5-70 to 5-71.) A plaintiff's suing on an arbitrable claim does not per se result in a waiver of the plaintiff's right to compel arbitration. *(Doers v. Golden Gate Bridge etc. Dist., supra,* 23 Cal.3d at p. 188.)

■ We conclude that plaintiff is not barred by res judicata from filing a petition to compel arbitration.[4] We express no opinion on how the court should rule on such a petition, if one is filed. The trial court should weigh the same factors—whether plaintiff has taken steps inconsistent with an

---

[3]Although not cited by the Siegels in their brief on appeal of the underlying lawsuit, it was cited by them in their brief on the attorney fees appeal.

[4]Plaintiff is barred by res judicata from relitigating the trial court's ruling that the forum plaintiff chose to determine the merits of the parties' dispute was not the correct one.

intent to invoke arbitration, whether plaintiff has unreasonably delayed in seeking arbitration, and whether defendant has been prejudiced by any delay—it weighs in any case where a petition to compel arbitration has been filed. (See, e.g., *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211-216 [69 Cal.Rptr.2d 79].)

B. *Appeal from Attorney Fee Award (Case No. H020921)*

 In each cause of action in Johnson's complaint, he sought recovery of his attorney fees pursuant to the attorney fees provision in the real estate purchase agreement. Having lost at the summary judgment motion, he now objects to the Siegels' recovery of their attorney fees based on the same provisions.

Two paragraphs from the real estate purchase agreement relate to attorney fees. The first, paragraph 25, provides: "ATTORNEY'S FEES: In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney's fees and costs from the non-prevailing Buyer or Seller, except as provided in Paragraph 21A."

The second, paragraph 21, provides: "Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action, subject to paragraphs 21 C and D below. Mediation fees, if any, shall be divided equally among the parties involved. If any party commences an action based on a dispute or claim to which this paragraph applies, without first attempting to resolve the matter through mediation, then that party shall not be entitled to recover attorney's fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED."

In this case, plaintiff did not attempt to resolve his dispute with the Siegels through mediation before he filed suit. He now argues that because attorney fee provisions are reciprocal and because he lost his right to recover attorney fees by not initiating mediation, that the Siegels have also lost their right to recover attorney fees. We disagree.

Mutuality of remedy is not at issue here, as Johnson contends. The parties' real estate purchase agreement provided that in any action between the buyer and seller, the prevailing party would be entitled to recover attorney fees, unless *that* party commenced an action without first attempting to resolve the matter through mediation. The provision is mutual and reciprocal because it

would apply equally to either party. Had the Siegels initiated an action without first attempting to resolve the matter through mediation, it would have applied to them. It was Johnson, however, who filed an action without first attempting to resolve the matter through mediation. By filing the action, Johnson forfeited his right to recover attorney fees.

Johnson makes much of the fact that the Siegels did not initiate mediation. However, their failure to do so is irrelevant to the attorney fee provisions of the parties' real estate purchase agreement. Seeking mediation is a condition precedent to the recovery of attorney fees *by the party who initiates the action*.

Johnson also argues that because his three causes of action sounded in tort, the contractual attorney fee provision does not apply. Again, we disagree. The broad attorney fees provision (*"In any action*, proceeding, or arbitration between Buyer and Seller *arising out of this Agreement*, the prevailing Buyer or Seller shall be entitled to reasonable attorney's fees and costs") applies to both tort and contract causes of action arising out of the real estate transaction. (Italics added.)

As the California Supreme Court explained in *Santisas v. Goodin* (1998) 17 Cal.4th 599 [71 Cal.Rptr.2d 830, 951 P.2d 399], "In their complaint in *this action, plaintiffs alleged both a contract claim and various tort claims. Does the contractual provision permit the prevailing party to recover attorney fees incurred for the defense of each of these claims? We conclude that it does. [¶] On its face, the provision embraces all claims, both tort and breach of contract, in plaintiffs' complaint, because all are claims 'arising out of the execution of [the real estate purchase] agreement or the sale.' [Citation.] Plaintiffs do not argue otherwise. If a contractual attorney fee provision is phrased broadly enough, as this one is, it may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims: '[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.' [Citation.]" (*Id.* at p. 608.)

Two Court of Appeal decisions, *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338 [5 Cal.Rptr.2d 154], and *Lerner v. Ward* (1993) 13 Cal.App.4th 155 [16 Cal.Rptr.2d 486], are also directly on point. Each discussed the broad attorney fee provisions included in the standard California Association of Realtors' Real Estate Purchase Agreement, and each found that the provision allowed for the recovery of attorney fees for causes of action sounding in tort as well as in contract.

As the *Lerner* court explained, "The *Xuereb* court found the language in the purchase agreement, providing for attorney fees to the prevailing party in any ' "lawsuit or other legal proceeding" to which "this Agreement gives rise," ' sufficiently broad 'to encompass both contract actions and actions in tort . . . .' [Citation.] The *Xuereb* court determined that its interpretation of the circumstances is in accord with the apparent intention of the parties because 'the complaint does not indicate that respondents were seeking attorney fees only in connection with their contract cause of action and not in connection with their tort claims.' " (*Lerner v. Ward, supra,* 13 Cal.App.4th at p. 160.) Likewise, in this case, Johnson's complaint sought recovery of his attorney fees for each of his three causes of action.

We consider these cases dispositive. The Siegels were entitled to their reasonable attorney fees as the prevailing party below.

### DISPOSITION

The judgment is affirmed without prejudice to plaintiff's filing a new petition to compel arbitration. On the appeal from the summary judgment motion (case No. H020624), each party will bear his or their own costs on appeal. On the appeal from the attorney fee award (case No. H020921), the Siegels are entitled to their costs on appeal.

Premo, Acting P. J., and Bamattre-Manoukian, J., concurred.

Respondents' petition for review by the Supreme Court was denied February 14, 2001.