[No. F038025. Fifth Dist. Feb. 24, 2003.]

JOYCE LEAMON, Plaintiff, Cross-defendant and Appellant,
KAREN HERRERA, Plaintiff, Cross-defendant and Respondent, v.
LEONARD KRAJKIEWCZ et al., Defendants, Cross-complainants and
Appellants.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I. through IV.

426

COUNSEL

Law Offices of Michael Abbott and Michael Abbott for Plaintiff, Cross-defendant and Appellant and for Plaintiff, Cross-defendant and Respondent.

Griffith & Farrace and Robert F. Farrace for Defendants, Cross-complainants and Appellants.

OPINION

**VARTABEDIAN, Acting P. J.**—This appeal concerns the enforceability of a contract for the sale of real estate. A homeowner and her daughter filed a quiet title action against the potential buyers, claiming their written contract was not valid. The buyers filed a cross-complaint for breach of contract, specific performance and other causes of action and claimed attorney fees pursuant to a clause in the contract. The jury found the contract was not valid and judgment was entered for the plaintiffs. The trial court subsequently denied the homeowner's request for attorney fees as the prevailing party under Civil Code section 1717.

The buyers appeal claiming numerous errors. The homeowner appeals claiming that, even though she asserted the contract was not valid and did not fulfill the contractual condition precedent of seeking mediation before filing suit, she is entitled to attorney fees under the contract because she would have been liable for attorney fees had the buyers prevailed.

In the unpublished portion of our opinion, we hold substantial evidence supports the jury's special verdict and find no merit in buyers' claims of prejudicial error.

In the published portion of our opinion, we hold the cross-appeal is without merit because the homeowner did not satisfy the contractual condition precedent of seeking mediation before commencing her quiet title action and, as a result, is not entitled to recover attorney fees.

The judgment is affirmed. The order taxing attorney fees also is affirmed.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Joyce Leamon (Leamon) owned a single-family residence located on Lydia Lane in Modesto, California (the Property). In 1996 or 1997 she listed the Property for sale with a realtor named Joe Randy. After the listing expired, her next-door neighbors, Leonard and Corrie Krajkiewcz (collectively the Krajkiewczes), expressed an interest in purchasing the Property. With the help of Rick Denison (Denison), a real estate agent and friend of Leonard Krajkiewcz, a sale contract was drawn up and the Krajkiewczes put down a deposit. However, the transaction was not completed because the Krajkiewczes were not able to come up with the money.

In late July or early August of 1999, the Krajkiewczes again expressed an interest in buying the Property. Leamon told them she wanted to clear $65,000 on the sale. The Krajkiewczes agreed and asked if Denison could represent both sides. Leamon agreed to this request. As a result, Denison first contacted Leamon about the proposed transaction a week or two before September 22, 1999. Denison told Leamon he would do the paperwork and get everything started.

On September 20, 1999, Leamon had a conversation with her daughter, Karen Herrera (Herrera), and told Herrera that she was selling the Property. In that conversation, Herrera told Leamon that she wanted the Property. Leamon told Herrera that, as her daughter, she came first. Herrera told her mother she would come by to discuss it.

By coincidence, on September 21, 1999, Joe Randy contacted Leamon to ask her if she was interested in selling the Property. Randy testified that Leamon told him that she wanted to give or sell the Property to her daughter. Also on September 21, 1999, Denison telephoned Leamon to make an appointment to come to her home to have the contract signed. Leamon told

Denison that her daughter wanted the Property, she did not intend to sell to the Krajkiewczes, and she would not make an appointment.

On September 22, 1999, around 9:30 to 10:00 a.m., Denison and the Krajkiewczes came to Leamon's door. Leamon told them she did not have an appointment with them. Denison then told Leamon that a verbal agreement was the same as a written one and if she did not go through with the sale[1] he would lose thousands of dollars and would take her to court. At that point, Leamon invited them inside and they went to her kitchen table. Also present in the kitchen was Leamon's husband, Shawnda Webber and Gloria Vierra.

During the conversation in the kitchen, the Krajkiewczes told Leamon more than once that they wanted her to sell them the Property, the reasons why they wanted the Property, and why she should sell it to them. Leamon also testified that during the conversation Denison threatened her with litigation several times. During the conversation, Leamon told them she wanted to wait for her daughter and tried to reach her daughter by telephone. Denison responded that he could not wait because he had a doctor's appointment in Stockton concerning his cancer.

Denison had brought with him documents including a standard form "California Association of Realtors' Residential Purchase Agreement and Receipt for Deposit" for use with single-family residential property (the Agreement), as well as a disclosure form regarding a real estate agent's representing both seller and buyer. Just before she signed the Agreement and other papers, Leamon left the kitchen because she was crying. Her eyes were full of tears and she could not see. She washed her face in the bathroom in an effort to calm down.

When Leamon returned to the kitchen, Denison showed her where to sign the documents. Denison and the Krajkiewczes left immediately after the documents were signed.

At trial, Leamon was asked if "but for the threats of Mr. Denison that you would be sued would you have signed those documents?" She responded, "No. Definitely not." Leamon also testified that she believed Denison when he told her that she was obligated to sign the documents because she had an oral agreement to convey the Property to the Krajkiewczes.

---

[1]In her two descriptions of Denison's statement, Leamon testified Denison said "that if I didn't go through with *this sale* to them that I would end up in court" and "that if I didn't go through with *the contract to sell the property* to them that he would take me to court." (Italics added.)

On September 23, 1999, after speaking with her daughter and son-in-law, Leamon telephoned her attorney. Subsequently, her attorney sent a letter dated September 23, 1999, to Denison and the Krajkiewczes stating that "you are hereby notified that Mrs. Leamon has decided to cancel the sale of her home." The letter mentioned the threats of litigation made to Leamon and stated her signature on the Agreement was procured under duress.

On December 2, 1999, the Krajkiewczes filed a small claims action for breach of contract claiming that Leamon owed them $5,000 in damages. On December 22, 1999, Leamon filed a complaint against the Krajkiewczes and Denison to quiet title in the Property and for infliction of emotional distress. Leamon also moved to consolidate the small claims action with the quiet title action. The cases were not consolidated because the small claims action was dismissed without prejudice.

On February 25, 2000, counsel for the Krajkiewczes sent counsel for Leamon a letter requesting mediation of the dispute in accordance with paragraph 21A of the Agreement. Leamon did not comply with this request.

In April 2000, Leamon and Herrera filed a verified second amended complaint to quiet title and to obtain a judicial declaration that the Agreement was void and of no effect. The relief requested in the second amended complaint did not include a request for attorney fees.

In June 2000, the Krajkiewczes filed an answer to the second amended complaint and filed a cross-complaint against Leamon and Herrera alleging causes of action for breach of contract, specific performance, fraudulent conveyance and intentional interference with economic relationship. The answer by the Krajkiewczes requested attorney fees pursuant to contract or statute. In addition, the relief requested in the cross-complaint by the Krajkiewczes included a request for attorney fees with respect to the causes of action for breach of contract and specific performance.

In July 2000, Leamon and Herrera filed an answer to the cross-complaint denying the Krajkiewczes were entitled to relief and requested a judgment that would include "attorneys' fees incurred in defending this matter."

A jury trial was held from Monday, December 4, 2000, through Friday, December 8, 2000. At the start of trial, the Krajkiewczes filed a number of papers, including their motion in limine No. 1, which sought to exclude certain documents based on the statute of frauds. The trial court granted this unopposed motion in limine. On December 8, 2000, the jury heard

closing arguments, received instructions from the trial court, and retired for deliberations at 3:44 p.m. At 4:32 p.m. they returned into court with a verdict. In response to question No. 1 of the special verdict, which asked if they found there was a valid contract between the Krajkiewczes and Leamon, the jury answered, "No." Judgment in favor of Leamon and Herrera was entered on January 17, 2001.

On March 7, 2001, the Krajkiewczes filed a motion for new trial asserting (1) Denison's threats of litigation related to his commission agreement and were not evidence of duress affecting the Agreement, (2) counsel for Leamon and Herrera acted improperly by arguing the jury should end its deliberation for reasons outside the evidence, (3) the jury acted improperly by rendering a verdict without deliberation, (4) the trial court erred by reversing its ruling on motion in limine No. 1, changing the special verdict form and asking only the foreperson about perceived irregularities in the deliberations. On March 20, 2001, the motion for new trial was heard and denied by the trial court. The Krajkiewczes filed a notice of appeal from the judgment.

After the entry of judgment, Leamon and Herrera filed a memorandum of costs that included a request for attorney fees in the amount of $27,612 and supported that request by filing a motion to fix attorney fees. The Krajkiewczes filed a motion to tax costs that asserted, among other things, that (1) Leamon and Herrera never offered mediation prior to filing their complaint and therefore failed to comply with the requirements of the Agreement for an award of attorney fees, and (2) Herrera was not sued as a cross-defendant on the breach of contract cause of action and therefore was not a prevailing party entitled to attorney fees.

The trial court ruled on the motion to tax costs and disallowed the entire request for attorney fees. Leamon brought a motion to reconsider and that motion was denied. Leamon filed a notice of appeal challenging the taxing of attorney fees as costs and the denial of the motion to reconsider.[2]

DISCUSSION

The Krajkiewczes argue that this matter should be remanded for a new trial because (1) Leamon failed to offer any evidence of duress in the

---

[2]Although Leamon's motion for attorney fees and corresponding notice of appeal included Herrera and the caption of Leamon's "Cross-Appellants' [sic] Reply Brief" is stated in the plural, page 6 of that reply brief specifically states Leamon is the only party cross-appellant, Herrera is not seeking attorney fees and Herrera is only a party to the appeal as a respondent; the reply brief also apologizes for the confusion created.

formation of the Agreement, (2) the reporter's transcript of the trial is unreliable and deprives them of their right to appeal, (3) the special verdict is tainted with attorney and juror misconduct, and (4) the trial court committed reversible error by admitting a letter in evidence that purported to cancel the Agreement. All of these arguments fail.

I.-IV.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## V.   *Attorney Fees Under the Agreement*

■   An appellate court reviews a determination of the legal basis for an award of attorney fees independently as a question of law. (*Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 677 [101 Cal.Rptr.2d 127].)

■   "[W]hen a party litigant prevails in an action on a contract by establishing that the contract is invalid, . . . [Civil Code] section 1717 permits that party's recovery of attorney fees whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed. [Citations.]" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 611 [71 Cal.Rptr.2d 830, 951 P.2d 399].)   ■   Leamon, seeking a literal application of the above quoted language to the facts of this case, argues she is entitled to attorney fees because the Krajkiewczes would have been entitled to attorney fees if they had prevailed. Accordingly, Leamon asserts the trial court's ruling taxing attorney · fees in the amount of $27,612 from her memorandum of costs should be reversed.

In response, the Krajkiewczes contend the trial court properly taxed the attorney fees because Leamon failed to seek mediation of the dispute and thus failed to satisfy a contractual condition precedent for the recovery of attorney fees. The trial court relied upon *Johnson v. Siegel* (2000) 84 Cal.App.4th 1087 [101 Cal.Rptr.2d 412], which involved the same standard form residential purchase agreement as was used in this case.

The Agreement contains two paragraphs relevant to the issues raised concerning attorney fees. Paragraph 25 provides: "ATTORNEY'S FEES: In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to

*See footnote, *ante*, page 424.

reasonable attorney's fees and costs from the non-prevailing Buyer or Seller, except as provided in Paragraph 21A."

Paragraph 21A provides: "MEDIATION: Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action, subject to paragraphs 21 C and D below. Mediation fees, if any, shall be divided equally among the parties involved. If any party commences an action based on a dispute or claim to which this paragraph applies, without first attempting to resolve the matter through mediation, then that party shall not be entitled to recover attorney's fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED."

In *Johnson v. Siegel, supra,* 84 Cal.App.4th at pages 1100-1101, the Sixth District interpreted paragraph 21A of the standard form residential purchase agreement to mean that a purchaser who commenced litigation without seeking mediation was liable for the seller's attorney fees after the seller prevailed in the litigation. In analyzing the purchaser's claim to attorney fees, the Sixth District stated that the purchaser forfeited his right to recover attorney fees by filing the action without seeking mediation. (*Johnson,* at p. 1101.) Based on this statement, which is obiter dictum, the Krajkiewczes contend Leamon is precluded from recovering attorney fees.

We have not found, nor have the parties cited, any published decision that addresses whether or not contractual conditions precedent to an award of attorney fees apply to a litigant who prevails by establishing the contract is invalid. Thus, as recognized by the trial judge, the question presented is one of first impression.[6]

To resolve this issue, we must consider whether or not there is a conflict between the concept of mutuality of remedy embodied in the provisions of Civil Code section 1717 regarding attorney fee claims under contractual attorney fee provisions (see *Santisas v. Goodin, supra,* 17 Cal.4th at p. 610)

---

[6]Paragraph 21A precludes a "party" who "commences an action" from recovering attorney fees if that party did not attempt to mediate the dispute. Leamon's appellate briefs did not raise, nor do we address, the issue of whether paragraph 21A should be interpreted to allow Leamon to recover attorney fees in her capacity as a prevailing *cross-defendant* because, in that capacity, she did not commence an action but only defended one. Nor do we express any view on whether paragraph 21A permits attorney fees to be awarded to a prevailing *defendant* who refused a plaintiff's request to mediate because only the party *commencing* an action is required to seek mediation.

and the provision in the Agreement that allows a party who commences an action to recover attorney fees only if that party first sought to resolve the dispute through mediation.

We conclude that the enforcement of the condition precedent to the recovery of attorney fees does not conflict with the concept of mutuality of remedy under the facts of this case.

First, mutuality of remedy exists because the Krajkiewczes could not have commenced their action in superior court[7] and recovered attorney fees without first seeking mediation. In that sense, the imposition of a condition precedent on the recovery of attorney fees is mutual and reciprocal. To hold otherwise would violate the concept of mutuality of remedy by requiring the party who argues the contract is valid to comply with conditions not imposed on the party who asserts the contract is invalid.

Second, requiring a party to mediate the question of the validity of contract does not necessarily mean that party concedes the contract is not voidable. A request for mediation can clearly state the party's position that the contract is voidable or invalid and that mediation is sought to preserve a claim for attorney fees.[8]

In addition, the public policy of promoting mediation as a preferable alternative to judicial proceedings is served by requiring the party commencing litigation to seek mediation as a condition precedent to the recovery of attorney fees. In this case, had the parties resorted to mediation, their dispute may have been resolved in a much less expensive and time-consuming manner. Instead, in a dispute that entered the court system as a small claims action for $5,000 in damages for breach of contract, Leamon spent over $27,000 in attorney fees and, as a result of her victory, avoided an order for specific performance that would have required her to accept $82,000 in exchange for the Property. The economic inefficiency of this result may have been avoided if, prior to judicial proceedings, a disinterested mediator had explained to Leamon and the Krajkiewczes the costs of litigating the dispute through to a judgment or a final resolution by an appellate court.

Accordingly, we determine the trial court did not err in taxing all of the attorney fees requested by Leamon as costs.

[7]Paragraph 21C(d) of the Agreement excluded small claims actions from the mediation requirement. Thus, either party could commence a small claims action without seeking mediation first. (See Code Civ. Proc., § 116.530 [limits on attorney participation in small claims actions].)

[8]The parties did not argue and therefore we do not consider whether a different rule should apply to contracts that are void as opposed to those that are voidable.

DISPOSITION

Judgment in favor of Leamon and Herrera is affirmed. The order taxing attorney fees as costs is affirmed. Because each party partially prevails, no costs are awarded on the instant appeals.

Levy, J., and Cornell, J., concurred.

A petition for rehearing was denied on March 25, 2003, and the following opinion was then rendered.

**VARTABEDIAN, Acting P. J.**—On March 11, 2003, Leamon and Herrera (hereafter Leamon, collectively) filed a petition for rehearing. Leamon argues this court mistakenly concluded the issue concerning attorney fees was one of first impression and we should modify our decision to avoid a conflict in the interpretation of Civil Code section 1717 (section 1717) with the First District's decision in *Wong v. Thrifty Corp.* (2002) 97 Cal.App.4th 261 [118 Cal.Rptr.2d 276] (*Wong*), a case Leamon cites for the first time.

In *Wong*, a landlord sued a tenant for damages discovered after the tenant had vacated the rented premises. The landlord accepted a Code of Civil Procedure section 998 (section 998) offer to compromise for an amount equal to about 60 percent of the alleged damage. The offer to compromise was silent as to attorney fees and costs. After judgment was entered, the landlord moved for attorney fees. The attorney fee language in the lease provided for payment of fees to the landlord in an enforcement action in which it was "determined" the tenant was in default of any obligation. The tenant argued the lease did not authorize an award of attorney fees because the section 998 judgment did not constitute a determination that it had defaulted on an obligation under the lease. The trial court agreed with the tenant's analysis and denied the motion.

The First District reversed and held section 1717 entitled the landlord to attorney fees. The First District stated the conditions in section 1717 for an award of attorney fees had been met because (1) there had been an action on the contract, (2) the contract provided that fees incurred to enforce the contract were to be awarded to one of the parties, and (3) the landlord recovered greater relief in the action and therefore was the "prevailing party" for purposes of section 1717. (*Wong, supra,* 97 Cal.App.4th at p. 265.) The First District concluded the contractual language confining entitlement to attorney fees to a party who prevailed upon a "determination" of liability conflicted with the statutory definition of "prevailing party" and, as a result, the conflicting contractual language was void. (*Ibid.*) The court reasoned that

allowing a contract to preclude the recovery of fees in an action that was settled instead of adjudicated would thwart the statutory purpose. (*Wong, supra,* 97 Cal.App.4th at p. 265.)

First, Leamon's petition for rehearing asserts the *Wong* case "squarely addressed" the issue this court determined was one of first impression—namely, the question of whether or not contractual conditions precedent to an award of attorney fees apply to a litigant who prevails by establishing the contract is invalid. We reject this assertion because the *Wong* case did not involve a contract established to be invalid or the satisfaction of a condition precedent completely within the control of the party requesting attorney fees. At a secondary level, *Wong* also is distinguishable because it involved the interplay between Civil Code section 1717 and Code of Civil Procedure section 998 while the instant case concerns the interaction between section 1717 and the public policies favoring mediation. Finally, the attorney fees provision in *Wong* was unilateral while the provisions in the Agreement apply equally to the buyer and the seller.

Second, Leamon's petition for rehearing asserts that the method of analysis and "the rationale of the *Wong* decision is compelling and should be adopted" in this case. We recognize that our methodology for applying section 1717 to the facts of this case appears to be different than the methodology applied by the First District in *Wong, supra,* 97 Cal.App.4th 261. However, it is not clear what arguments were presented or considered by the First District in *Wong* and therefore this apparent difference in methodology could be the result of a difference in how the cases were presented. Thus, the difference in methodology is not necessarily the result of conflicting views of the law and grounds exist for reconciling this decision with the *Wong* decision.

Leamon's petition asserts "a mistake of law" in our conclusion that "the enforcement of the conditions precedent to the recovery of attorney fees does not conflict with the concept of mutuality of remedy under the facts of this case." Leamon contends that because the Krajkiewczes would have recovered their attorney fees had they prevailed on the contract causes of action, section 1717 mandates that Leamon also is entitled to reasonable attorney fees.

The first sentence of section 1717, subdivision (a) provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is

the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

Leamon construes section 1717 to unambiguously award attorney fees to the prevailing party without requiring that party to satisfy any contractual restrictions or conditions precedent. Under this expansive construction of section 1717, once a contract opens the door for a prevailing party to recover attorney fees, the contract cannot close that door in a particular set of circumstances by including qualifications, restrictions or limitations on the right to attorney fees. This construction of section 1717 by Leamon of the phrase "specifically provides" would prohibit parties any flexibility in stating the precise circumstance in which attorney fees are recoverable.

To harmonize the language in the first sentence of section 1717, subdivision (a) with the other language in that subdivision, we construe the phrase "specifically provides" to permit parties to a contract to set forth with specificity the circumstances in which attorney fees are recoverable, provided any such specific contractual provisions do not otherwise conflict with the requirements of section 1717.

The foregoing construction of the phrase "specifically provides" is reasonable when considered in light of the legislative history of section 1717 as well as the public policy concerns, particularly the evils section 1717 was designed to remedy. (See *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970].)

The public policies of establishing mutuality of remedy and eliminating one-sided attorney fees provisions are not necessarily served by construing section 1717 to void all contractual restrictions on attorney fees. Restrictions do not offend these public policies if they are mutual, do not favor one party over the other, and cannot be manipulated for tactical advantage in the litigation by one of the parties. Therefore, public policies underlying section 1717 would not be served by construing the phrase "specifically provides" in a manner that imposes a blanket prohibition on all restrictions or conditions that might be contractually imposed on an award of attorney fees to a prevailing party. Moreover, on the instant facts, public policies of section 1717 are served by contractual conditions encouraging parties to settle their disputes through mediation rather than proceeding to a lengthy, costly trial. We are satisfied that mutuality is served when both parties are subject to the same reasonable restrictions that do not inherently favor one party, as is the case here.

We need not elaborate upon our rejection of other belated bases claimed to justify rehearing. Failure of Leamon to satisfy a condition precedent does not

amount to a waiver prohibited by section 1717, subdivision (a). (See *Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 211 [91 Cal.Rptr.2d 716, 990 P.2d 591].) Likewise, the claim that the Krajkiewczes are judicially estopped from contending Leamon's entitlement to attorney fees is restricted by the Agreement because the prayer for relief of the Krajkiewczes included a demand for attorney fees is utterly meritless. (See *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [70 Cal.Rptr.2d 96].)

Therefore, we conclude Leamon is not entitled to a rehearing or to a modification of the opinion and disposition previously entered.

The petition for rehearing or modification of opinion is denied.

Levy, J., and Cornell, J., concurred.

A petition for a rehearing was denied March 25, 2003, and the petition of appellant Joyce Leamon for review by the Supreme Court was denied May 14, 2003.