Filed 1/10/14  Sharifpour v. Le CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SINA SHARIFPOUR et al.,<br><br>  Plaintiffs and Respondents,<br><br>    v.<br><br>TAM LE et al.,<br><br>  Defendants and Appellants. | G047481<br><br>(Super. Ct. No. 30-2008-00111427)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Judge.  Affirmed.

        Donna Bader for Defendants and Appellants.

        Randall A. Spencer; and Alexander H. Escandari for Plaintiffs and Respondents.

                        *        *        *

An arbitration award against the sellers of residential real property was confirmed to judgment. The sellers, Tam and Kim Le, contend the court erred in confirming to judgment the awards of attorney fees and punitive damages, inasmuch as the arbitrator exceeded his powers in making those awards in the first place. We disagree. The terms of the purchase agreement between the Les and the buyers of their property, Sina and Shekoufeh Sharifpour, did not bar an award of attorney fees under the facts of this case. Moreover, contrary to the Les' assertion, they had an opportunity to rebut the evidence of their financial condition as presented by the Sharifpours, and indeed did rebut that evidence, so they were not deprived of fundamentally fair procedures. We affirm.

I

FACTS

The Sharifpours purchased a residential property from the Les. After the purchase, they discovered an undisclosed subsurface ravine full of water on the property, which created substantial drainage and water intrusion problems. The Sharifpours filed an action against the Les for fraud, breach of contract, and violation of Civil Code section 1102.6 in the sale of the property.

The Les filed a petition to compel arbitration, which the Sharifpours opposed. The matter was ordered to arbitration. The Sharifpours obtained an arbitration award in the amount of $933,682.89, consisting of $184,000 in economic damages, $368,000 in punitive damages, and $381,682.89 in attorney fees and costs. The trial court reduced the punitive damages award to $147,000 and otherwise confirmed the award to judgment.

The Les filed an appeal and the Sharifpours filed a cross-appeal. The cross-appeal was dismissed for failure to file a civil case information statement.

2

II

DISCUSSION

A.  *Standard of Review:*

"The scope of judicial review of arbitration awards is extremely narrow because of the strong public policy in favor of arbitration and according finality to arbitration awards.  [Citations.]  An arbitrator's decision generally is not reviewable for errors of fact or law.  [Citations.]  However, Code of Civil Procedure section 1286.2 provides limited exceptions to this general rule, including an exception where '[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.'  [Citations.]"  (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33.)  An arbitrator exceeds his or her "powers within the meaning of Code of Civil Procedure section 1286.2 by issuing an award that violates a party's statutory rights or 'an explicit legislative expression of public policy.'  [Citations.]"  (*Ahdout v. Hekmatjah*, *supra*, 213 Cal.App.4th at p. 37.)  "'[W]hether the arbitrator exceeded his or her powers . . . , and thus whether the award should have been vacated on that basis, is reviewed on appeal de novo.'  [Citation.]"  (*Id.* at p. 33.)

Here, the Les contend the arbitrator exceeded his powers in two ways: (1) he awarded attorney fees where not permitted by the purchase agreement; and (2) he awarded punitive damages where the Les had not had notice of the evidence against them and an opportunity to rebut that evidence, such that he violated the Les' due process rights.  We disagree with each of the Les' assertions, for reasons we shall show.

B.  *Attorney Fees:*

*(1)  Purchase agreement—*

The Sharifpours and the Les executed a California Association of Realtors standard form California Residential Purchase Agreement.  Paragraph 22 of the purchase agreement provides:  "ATTORNEY FEES:  In any action, proceeding, or arbitration

3

between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A."

Paragraph 17A provides in pertinent part:  "MEDIATION:  Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, . . . before resorting to arbitration or court action. . . .  If . . . any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. . . ."

Paragraph 17B states in relevant part:  "ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim . . . arising between them out of this Agreement . . . , which is not settled through mediation, shall be decided by neutral, binding arbitration . . . ."

*(2)  Mediation and arbitration demands—*

The arbitrator found that the Sharifpours sent the Les a letter dated August 20, 2008 requesting mediation.  The letter stated in part:  "[C]onsistent with paragraph 17(A) of the Purchase Agreement . . . , [the] Sharifpours hereby demand a mediation with you . . . .  You will have until September 1, 2008, to inform the undersigned about your willingness to participate in said mediation.  Of course, if you fail to communicate you[r] acquiescence to this mediation by the due date, we . . . will immediately file a complaint in the Orange County Superior Court . . . ."  (Boldface and underscoring omitted.)

The arbitrator also found that the Les ignored the demand letter.  He noted that if the Les had needed more time to consider the matter they could have asked for it, but they did not do so.

4

The Sharifpours filed their complaint on September 3, 2008. The Les filed a demurrer on October 30, 2008. The Sharifpours filed an amended complaint on January 9, 2009.

Twenty days later, counsel for the Les sent a letter to counsel for the Sharifpours stating in pertinent part: "[T]he residential purchase agreement mandates that this matter proceed by way of binding arbitration. The agreement sets out the requirement for mediation and arbitration of disputes at page 5, paragraph 17. The agreement requires mediation of any dispute or claim arising out of the agreement before resorting to arbitration or court action. Item 17B is a binding arbitration clause which was signed by the parties . . . . [¶] *I request that you stipulate to stay the proceedings and proceed by way of binding arbitration.*" (Italics added.)

By letter dated February 2, 2009, counsel for the Sharifpours replied: "I am respectfully declining to stipulate as it is our position that your client[s] waived the right to arbitrate when they filed the demurrer to our original complaint. Furthermore, CCP section 1281.2(c) gives the Court discretion to stay arbitration proceedings where there are additional parties to litigation in the pending action who are not bound by the arbitration agreement, as it is in this case."[1]

The Les filed a motion to compel arbitration, which the Sharifpours opposed. The court granted the motion.

*(3) Motion for attorney fees—*

In their motion, the Sharifpours stated that as prevailing parties, whose demand for mediation had been refused, they were entitled to attorney fees under paragraphs 17A and 22 of the purchase agreement. In opposition to the motion, the Les contended that the Sharifpours had not sent a request for mediation before filing their lawsuit. Consequently, they argued, the Sharifpours were not entitled to attorney fees

---

[1] The other defendants to the litigation were a real estate agent, a real estate brokerage, a property management company and a property inspection company.

because they had commenced litigation without first trying to resolve the matter through mediation, as required by paragraph 17A of the purchase agreement. The Les also asserted that the Sharifpours' rejection of their attorney's demands constituted "a refusal to mediate and arbitrate."

The arbitrator, as we have already noted, found that the Sharifpours had sent an August 20, 2008 mediation demand and that the Les had ignored it. Although the arbitrator made no specific findings with respect to the effects of either the Les' January 29, 2009 demand letter or the Sharifpours' response thereto, he impliedly found that the Sharifpours' response did not preclude an award of attorney fees. (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567; *Virtanen v. O'Connell* (2006) 140 Cal.App.4th 688, 709.)

*(4) Analysis—*

With regard to the Sharifpours' August 20, 2008 demand for mediation, the arbitrator found, as previously noted, that the Sharifpours had proven by a preponderance of the evidence that they sent the same, in compliance with paragraph 17A, and that the Les received the same and ignored it. Given this finding, it is clear the Les were the ones who refused to mediate, not the Sharifpours. Consequently, the fact that the Sharifpours commenced litigation without the matter having been submitted to mediation is no bar to the recovery of attorney fees under paragraph 17A.

We turn, then, to the matter of the Les' January 29, 2009 demand letter. The Les characterize the letter as a demand for both mediation and arbitration and they characterize the Sharifpours' response as "a refusal to mediate in violation of the express terms of the Residential Purchase Agreement." Based on those characterizations, they contend the Sharifpours are barred by paragraph 17A from receiving attorney fees.

We disagree. After the Sharifpours had filed a complaint, the Les had filed a demurrer, the court had ruled on the demurrer, and the Sharifpours had filed an amended complaint, counsel for the Les sent out the January 29, 2009 demand letter.

6

That letter does recite that paragraph 17 of the purchase agreement "sets out the requirement for mediation and arbitration of disputes" and "requires mediation of any dispute or claim arising out of the agreement before resorting to arbitration or court action." However, the letter begins by stating the "purchase agreement mandates that this matter proceed by way of binding arbitration . . . ." It concludes with the demand: "*I request that you stipulate to stay the proceedings and proceed by way of binding arbitration.*" (Italics added.) The letter did not demand mediation.

When counsel for the Sharifpours replied, he said that the Les had waived their right to demand arbitration and that the court had the discretion to stay arbitration proceedings. There is no indication that counsel for the Les provided a responsive clarification to the effect that the demand was intended to be a demand for mediation.

The Les nonetheless maintain that case law shows the Sharifpours' refusal to acquiesce to the Les' demand made the Sharifpours ineligible for the recovery of attorney fees. They cite several cases involving prior versions of the standard form California Residential Purchase Agreement at issue here. Those cases are *Lange v. Schilling* (2008) 163 Cal.App.4th 1412, *Frei v. Davey* (2004) 124 Cal.App.4th 1506, and *Leamon v. Krajkiewcz* (2003) 107 Cal.App.4th 424. None of those cases support the Les' position.

In *Lange v. Schilling*, *supra*, 163 Cal.App.4th 1412, the buyer of property did not tender a mediation demand to the sellers because he did not know their whereabouts. He filed a lawsuit instead, and only thereafter hired a private investigator to locate the sellers so he could serve them. After he served them with the lawsuit, he offered to stay the lawsuit and mediate the matter. (*Id.* at pp. 1414-1415.) The appellate court held that paragraph 17A of the purchase agreement barred an award of attorney fees to the buyer/plaintiff because he filed a lawsuit without first offering to mediate. (*Id.* at pp. 1416-1417.) In the case before us, however, the Sharifpours did offer to mediate before they filed their lawsuit.

7

In *Frei v. Davey*, *supra*, 124 Cal.App.4th 1506, the buyers of property sent a mediation demand to the sellers, but the sellers did not respond. The buyers then filed a lawsuit and sent another letter offering to mediate the dispute. The sellers declined. (*Id.* at pp. 1509, 1513.) After the sellers prevailed in the litigation, they sought attorney fees under paragraph 22 of the purchase agreement. (*Id.* at pp. 1510-1511.) The appellate court held that the sellers were not entitled to attorney fees because they had refused to mediate, as required by paragraph 17A. (*Id.* at pp. 1513-1514, 1518.)

In the matter before us, however, the Sharifpours did not refuse to mediate. They offered to mediate before they filed the lawsuit. True, the Sharifpours declined an offer to arbitrate, which was tendered to them only after a complaint, a demurrer, and an amended complaint had been filed. However, paragraph 17A does not say that attorney fees will be unavailable to a prevailing party whose offer to mediate is rejected and who thereafter refuses to accept an offer to arbitrate made only after the litigation has commenced.

Finally, in *Leamon v. Krajkiewcz*, *supra*, 107 Cal.App.4th 424, the seller of property contended that the purchase agreement she signed was invalid, because she signed it under duress. (*Id.* at pp. 428-429.) After prevailing in her quiet title action, she sought attorney fees on the principle of mutuality, arguing that the buyers/defendants would have been entitled to attorney fees under the purchase agreement had they prevailed in establishing that it was valid. (*Id.* at pp. 429-431.) However, the court held that attorney fees were unavailable to the seller because she had failed to seek mediation before filing her lawsuit, and indeed had refused a request to mediate. (*Id.* at pp. 429, 433.) *Leamon*, like the other cases the Les' cite, is distinguishable from the one before us, because the Sharifpours did seek mediation before filing their lawsuit.

In sum, paragraph 17A states that a party shall not be entitled to attorney fees if he or she "commences an action without first attempting to resolve the matter through mediation." That is not the situation here. The Sharifpours did seek mediation.

8

Paragraph 17A also provides that attorney fees shall not be available to a party who "refuses to mediate after a request has been made." Again, that is not our situation. The Les' ultimately requested to arbitrate, not to mediate. Inasmuch as paragraph 17A did not bar an award of attorney fees in this matter, the arbitrator did not err in awarding attorney fees to the Sharifpours as the prevailing parties.

*C. Punitive Damages:*

The Les also contend the court erred in confirming the award of punitive damages, even in a reduced amount, because the arbitrator made the award despite the fact that they had had no opportunity to respond to the Sharifpours' evidence in support of their punitive damages request.

*(1) Background—*

In his July 26, 2011 interim arbitration award the arbitrator found by clear and convincing evidence that the Les had committed fraud against the Sharifpours. He asked the Sharifpours to specify the amount of punitive damages they were requesting and provide their reasoning in support of their request. He also gave them the opportunity to request further discovery relevant to punitive damages.

The Sharifpours thereafter filed a motion for an order permitting discovery of the Les' financial information. They sought a production of documents including copies of paychecks, W-2s, 1099s, federal and state tax returns, a listing of real estate holdings, a listing of securities holdings, evidence of ownership of foreign assets, a balance sheet, copies of credit card statements, evidence of lines of credit, copies of credit applications, copies of passports, copies of bank records, and other financial documents showing income and/or assets, for a five-year period. The arbitrator ordered that the Les provide most of the requested documents, for a two-year period only. He denied without prejudice the Sharifpours' request to take the depositions of the Les.

9

In their January 12, 2012 brief in support of their request for punitive damages, the Sharifpours stated that they had had the CPA firm of White, Zuckerman, Warsavsky, Luna, Hunt, LLP review and analyze the financial documents received, and that the firm's report of the Les' net worth as of December 1, 2011 was attached to their brief as Exhibit A (White Zuckerman Report). The White Zuckerman Report showed that the Les had a net worth of $1,473,000, excluding the value of Dr. Le's businesses— the Memorialcare Surgical Center at Orange Coast LLC and Tam Huu Le M.D., Inc.— neither of which had been valued. In addition, in the body of their brief, the Sharifpours represented that the Les' 2010 tax returns showed an annual income of $829,278. They requested punitive damages in the amount of $1,656,000.

In opposition to the request for punitive damages, the Les argued that the amount sought was out of proportion to the $184,000 in compensatory damages that had been awarded. They also argued that the White Zuckerman Report was inadmissible hearsay, inasmuch as it was neither signed nor supported by a declaration to authenticate the report and establish a foundation therefor. The Les further argued that the Sharifpours "should not be afforded the luxury of curing this defect in a reply brief."

In support of their opposition, the Les filed the declaration of CPA Mary Elizabeth Merkle. She declared that she had reviewed the financial documents provided by the Les and also the White Zuckerman Report. In addition, she prepared her own report of the Les' net worth (Merkle Report), a copy of which was attached to her declaration. Merkle set the Les' total net worth at $304,370. In her notes attached to the Merkle Report, she explained where and why her figures differed from the figures shown in the White Zuckerman Report. For example, she noted that the amounts in various cash accounts had been reduced dramatically or completely eradicated, and she excluded the values of certain IRAs and college savings plan accounts.

The Sharifpours provided a reply brief in support of their request for punitive damages, together with a declaration of CPA Jack Zuckerman. Zuckerman

10

declared that he was the one who had prepared the White Zuckerman Report. He also said that he had received a copy of the Merkle Report and supporting declaration. He provided his viewpoint on the differences between the two reports.

After receiving and considering the reports and declarations of each of the CPAs, and the briefing of each party, the arbitrator issued another interim arbitration award, this one addressing punitive damages. The arbitrator considered the degree of reprehensibility of the Les' conduct and sought to fix a punitive damages award that ensured both proportionality and reasonableness. He awarded $368,000 in punitive damages—an amount equal to double the amount of the compensatory damages awarded.

The Les filed a motion for reconsideration. They claimed that the Sharifpours had failed to provide timely, admissible evidence of the Les' financial condition, inasmuch as the White Zuckerman Report, which had been attached to the Sharifpours' moving papers, was unaccompanied by a declaration laying a foundation.

The arbitrator overruled the Les' objections to the White Zuckerman Report, based on Evidence Code section 1400,[2] and denied the motion for reconsideration. He explained, inter alia, that: (1) the White Zuckerman Report was written on the letterhead of the Sharifpours' retained forensic experts—an established forensic accounting firm; (2) the report relied on documents that the arbitrator had ordered produced; and (3) the Sharifpours later properly provided the signed declaration of Zuckerman. The arbitrator also stated that the evidence was sufficient to establish that the Les had a positive net worth.

---

[2]        Evidence Code section 1400 provides: "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law."

*(2)  Analysis—*

The Les cite *Adams v. Murakami* (1991) 54 Cal.3d 105, for the proposition that "evidence of the defendant's financial condition is a prerequisite to a punitive damages award" and the burden of producing that evidence is on the plaintiff.  (*Id.* at p. 119.)  The Les say that when the Sharifpours filed their brief in support of their request for punitive damages, they provided no admissible evidence in support of their request.  They contend that the arbitrator exceeded his powers when he considered the Sharifpours' request, unsupported by admissible evidence.

By analogy to summary judgment law, the Les argue that the request should not have been considered because the Sharifpours' moving papers were not supported by admissible evidence.  (Cf. *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315 [in ruling on summary judgment motion, "court may ignore evidence not disclosed in moving party's separate statement of undisputed facts"].)  They also claim, by analogy to the rules of appellate procedure, that the arbitrator should not have considered evidence disclosed for the first time in the Sharifpours' reply brief.  (Cf. *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [unfair to respondent to consider point raised for first time in appellant's reply brief].)

More specifically, the Les state that they were entitled to adequate notice of the evidence being presented against them and a fair opportunity to rebut the same.  (Cf. *Carpenters 46 N. CA Conference Bd. v. Zcon Builders* (1996) 96 F.3d 410, 413 [under federal labor law, parties to arbitration entitled to fundamentally fair hearing].)  They say they got neither.  The Les claim that the evidence was presented only in support of the Sharifpours' reply brief and that they had no opportunity to rebut it.

We disagree with this characterization of the events.  The White Zuckerman Report was attached to the Sharifpours' moving papers and the Les had an opportunity to rebut the same.  Indeed, they did so, by providing a report by Merkle, their own CPA, criticizing the White Zuckerman Report.  What they did not have was an

12

opportunity to challenge two items attached to Zuckerman's declaration—his curriculum vitae and his chart showing the differences between the White Zuckerman Report and the Merkle Report.  So, Merkle provided a description of the differences between her report and Zuckerman's and Zuckerman provided a chart laying out the differences in another format.  At the end of the day, the arbitrator had the competing reports of two CPAs— one representing the interests of the Sharifpours and one representing the interests of the Les.  Most importantly, the Les' CPA had had an opportunity to criticize the work of the Sharifpours' CPA.  The Les were not subjected to a fundamentally unfair procedure.  In short, none of the Les' citations to authority convince us that the arbitrator exceeded his powers in considering the White Zuckerman Report and in awarding punitive damages.

## III

## DISPOSITION

The judgment is affirmed.  The Sharifpours shall recover their costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

THOMPSON, J.

13