Filed 11/17/20  Barba v. Goldline CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ARACELY BARBA, | B295417 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. |
| v. | No. BC720007) |
| GOLDLINE, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Michael L. Stern, Judge.  Reversed and remanded for further proceedings.

Gordon Rees Scully Mansukhani, Matthew G. Kleiner and Casey Shaw for Defendants and Appellants.

Rosen Saba, Ryan D. Saba and Elizabeth L. Bradley for Plaintiff and Respondent.

_____

Defendants and appellants A-Mark Precious Metals, Inc. (A-Mark), and Goldline, Inc. (Goldline), appeal from an order denying their motion to compel arbitration. On the basis of information contained in an unverified complaint filed by plaintiff and respondent Aracely Barba, as well as counsel's argument, the trial court denied defendants' motion on the grounds that plaintiff had been fraudulently induced into agreeing to arbitrate her dispute with defendants.

We conclude that the trial court should have held an evidentiary hearing regarding the issue of fraudulent inducement. Accordingly, we reverse the trial court's order and remand the matter for an evidentiary hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

I. *Factual Background*

A. <u>Plaintiff's employment with defendants</u>

Plaintiff began working for Goldline, LLC (the LLC), as an account executive in July 2011. The LLC employed numerous account executives; according to Goldline, the number of account executives fluctuated based on market forces, such as precious metals supply, consumer demand for precious metals, inflation, interest rates, the value of the dollar, and geopolitical factors.

In August 2017, A-Mark purchased the assets of the LLC and converted the company into Goldline. At the time, plaintiff had been on medical leave from the LLC since March 27, 2017.

According to Blair J. Harris, the former executive vice president of the LLC and later the president of Goldline, "[w]hen A-Mark purchased the LLC, it terminated [plaintiff]." Then, when Goldline emerged from the purchase it offered plaintiff the position of senior account executive. In fact, on August 25, 2017, Goldline client relations director, Lisa Weedman (Weedman),

2

sent notice to all of the LLC employees on leave, including plaintiff, that the LLC employees would become Goldline employees upon acquisition and that employee benefits would continue with the new company. The letter instructed plaintiff to contact Weedman if and when she was able and willing to begin work for Goldline.

Plaintiff contends that she never received a copy of this letter from Weedman.

B. <u>Plaintiff returns from medical leave to join Goldline; she signs two agreements that contain arbitration provisions</u>

When plaintiff returned from leave on October 30, 2017, Weedman handed plaintiff a manila folder containing both a formal offer letter (the offer letter) and a document titled Binding Mutual Agreement to Arbitrate Claims (the arbitration agreement). The offer letter is a three-page letter on A-Mark letterhead formally offering plaintiff the position with Goldline, an A-Mark wholly-owned subsidiary, and includes an arbitration provision. The arbitration agreement is a single-page document containing four paragraphs concerning arbitration.

The offer letter and arbitration agreement (collectively the agreements) contain nearly identical[1] arbitration provisions: "I agree that to the fullest extent allowed by law, any controversy, claim or dispute between me and [A-Mark or Goldline] and/or any of its related entities, holding companies, parents, subsidiaries

---

[1]     In the offer letter, plaintiff agreed to submit any claims against Goldline or any holding company or parent (presumably A-Mark) to binding arbitration. In the arbitration agreement, plaintiff agreed to submit any claims against A-Mark or its subsidiaries (presumably Goldline) to binding arbitration.

. . . (collectively, 'Company') will be submitted to final and binding arbitration as the sole and exclusive remedy, regardless of whether such dispute is initiated by Company or me."  The agreements also set forth, in all capital letters:  "BY AGREEING TO THIS BINDING MUTUAL ABITRATION PROVISION, BOTH I AND COMPANY GIVE UP ALL RIGHTS TO A TRIAL BY JURY."  Finally, the agreements provide:  "I understand that this Agreement is voluntary and my decision to accept or reject it will not impact my employment in any way."

According to Weedman, she knew plaintiff was a literate, English-speaking individual when she presented the agreements to her.  Plaintiff never questioned the paperwork or showed any confusion.  Rather, she seemed eager to sign the agreements and enthusiastic about joining Goldline.  Plaintiff, on the other hand, claims that she was told she had to sign both of the agreements immediately.  In fact, although the offer letter provides that it would terminate on the close of business on the second business day following the date of the letter if not accepted by that date, in the very next paragraph, it provides:  "Please signify your acceptance of this offer by signing this letter and returning it to Human Resources by October 30, 2017," the date plaintiff was presented with it.

No one reviewed or discussed the provisions of the offer letter or the arbitration agreement with plaintiff.  No one told her that the terms were negotiable or that she could refuse to agree to the terms set forth in either document, or that there was some sort of opt-out procedure for the arbitration agreement.  No one discussed the advantages or disadvantages of agreeing to binding arbitration with plaintiff; no one explained that she was giving up her right to a jury trial.  No one provided plaintiff with a copy

4

of the arbitration rules. And no one told plaintiff that she could consult with an attorney or hold off on signing any document until she consulted with an attorney.

Plaintiff signed both the offer letter and the arbitration agreement that day.

C. <u>Plaintiff's employment is terminated</u>

On November 15, 2017, plaintiff's employment with Goldline was terminated. According to defendants, "Goldline let [her] go as part of a reduction in workforce driven by market forces." There is no evidence as to why plaintiff was included in the reduction in force (RIF) or when the decision was made to lay off plaintiff as part of the RIF. According to plaintiff, had she known that her job was going to be terminated 16 days after returning from medical leave, or had she known that she was going to be part of a RIF, she never would have signed either the offer letter or the arbitration agreement.

II. *Procedural Background*

Following the termination of her employment, plaintiff filed a lawsuit in Los Angeles Superior Court. Her complaint sets forth 11 causes of action arising out of her employment with Goldline. In particular, she alleges that defendants implemented a discriminatory RIF, whereby they decided in August 2017 to terminate her employment, but they did not execute the RIF until November 15, 2017, approximately two weeks after plaintiff signed an agreement to arbitrate all disputes with defendants.

Defendants promptly moved to compel arbitration. They argued that because plaintiff signed an enforceable arbitration agreement, her claims must be submitted to binding arbitration.

Plaintiff opposed defendants' motion, arguing fraudulent inducement and unconscionability as defenses to arbitration.

5

Specifically, plaintiff asserted that defendants fraudulently induced her into signing the agreements through an RIF scheme whereby defendants "[captured] and [got] rid of [their] long-term employees, like [plaintiff], that had taken a medical leave of absence from their employment."

Plaintiff also asserted that the agreements were procedurally and substantively unconscionable. In support, she averred that no one from Goldline ever told her that signing the agreements was voluntary; she also attests that no one explained the impact of signing the agreements.

After entertaining oral argument, the trial court denied defendants' motion to compel arbitration. There is no reporter's transcript of that hearing. But, the minute order provides that the trial court found that "[t]he contract was induced by fraud." The trial court instructed plaintiff to give notice.

In accordance with the trial court's directive, plaintiff filed and served a notice of ruling, which provides: "After reviewing the filed motion, opposition, reply and supplemental briefing, and oral argument of counsel, the Court finds good cause to DENY the motion to compel arbitration for the following reasons. [¶] The Court held that Plaintiff's signing of Defendants' arbitration agreement was induced by fraud and that Defendants[] had the fraudulent intent to deceive Plaintiff into signing the agreement knowing that Plaintiff's employment would be shortly terminated thereafter. Because there was a lack of mutuality, the arbitration is void on its face, deemed unconscionable, and, therefore, unenforceable. Therefore, based on circumstantial evidence presented to the Court, the Court denies Defendants' Motion to Compel Arbitration and this matter will remain in the Los Angeles Superior Court."

6

Defendants did not object to the notice of ruling.

Defendants' timely appeal ensued.

## DISCUSSION

I. *Appealability and the Standard of Review*

An order denying a petition to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).) An order denying arbitration is generally reviewed for abuse of discretion. (See *Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 484.) The de novo standard of review applies only where the trial court's denial of a petition to arbitrate presents a pure question of law. (See *Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.) To the extent the trial court's decision on arbitrability is based upon the resolution of disputed facts, we review the decision for substantial evidence. (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71.)

II. *Relevant Law*

"California law, like federal law, favors enforcement of valid arbitration agreements." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97.) Arbitration agreements are valid, irrevocable, and enforceable unless grounds exist at law or in equity for their revocation. (*Id.* at p. 98; Code Civ. Proc., § 1281.)

"'[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its

7

existence by a preponderance of the evidence.  If the party opposing the petition raises a defense to enforcement . . . that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense.' [Citation.]"  (*Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 761 (*Hotels Nevada*).)

According to *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394 (*Rosenthal*), "facts relevant to enforcement of the arbitration agreement must be determined "'in the manner . . . provided by law for the . . . hearing of motions.'" [Citations.]  This 'ordinarily mean[s] the facts are to be proven by affidavit or declaration and documentary evidence, with oral testimony taken only in the court's discretion.' [Citations.]  The *Rosenthal* court further observed that where 'the enforceability of an arbitration clause may depend upon which of two sharply conflicting factual accounts is to be believed, the better course would normally be for the trial court to hear oral testimony and allow the parties the opportunity for cross-examination.' [Citation.]"  (*Hotels Nevada, supra,* 144 Cal.App.4th at pp. 761–762.)

"In *Rosenthal*, the Supreme Court held that the trial court erred in denying a petition to compel arbitration where, following an evidentiary hearing, the trial court found that the parties opposing arbitration had presented sufficient evidentiary support for their allegations but declined to resolve the factual issues presented by those allegations.  [Citation.]  Appellate courts have likewise reversed denials of petitions to compel arbitration where the parties opposing arbitration asserted that there were grounds for revocation of the arbitration agreements but presented no

evidentiary support for their contentions."  (*Hotels Nevada*, *supra*, 144 Cal.App.4th at p. 762.)

III.  *Analysis*

Pursuant to *Hotels Nevada*, this matter must be remanded for an evidentiary hearing on the question of whether plaintiff was fraudulently induced into signing the agreements.  "[F]raud in the inducement occurs when "'the promisor knows what he is signing but his consent is *induced* by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is *voidable*.'""  (*Hotels Nevada*, *supra*, 144 Cal.App.4th at p. 763.)

Here, the allegations of plaintiff's complaint, coupled with the arguments set forth in her opposition to defendants' motion to compel arbitration, support a potential theory of fraud in the inducement.  She contends that defendants decided to terminate her employment in August 2017, but delayed in executing that decision until after plaintiff had agreed to arbitrate any disputes with them.  This theory is sufficient to raise a question about whether plaintiff was duped into agreeing to arbitration. But, as defendants rightly point out, plaintiff's allegations in the complaint are insufficient to prove fraudulent inducement. (*Hotels Nevada*, *supra*, 144 Cal.App.4th at pp. 762–763.)  Rather, to deny defendants' motion, the trial court needed evidence. While plaintiff submitted a declaration in opposition to defendants' motion to compel arbitration, her declaration did not set forth any *evidence* regarding the alleged fraud; instead, it simply pointed the reader to the allegations in her complaint. Thus, the matter must be remanded for the trial court to hold an evidentiary hearing on the issue of fraudulent inducement.

Urging us to reverse and direct the trial court to enter an order granting their motion to compel arbitration, defendants

9

assert that the arbitrator, not the trial court, must determine whether plaintiff was fraudulently induced into signing the agreements. Our Supreme Court has held that "claims of fraud in the inducement of the contract (as distinguished from claims of fraud directed to the arbitration clause itself) will be deemed subject to arbitration," i.e., decided by the arbitrator and not the trial court. (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323.) Where, however, "it is claimed that fraud induced the entering into of the arbitration clause itself, the matter must be resolved by the court rather than the arbitrator." (*Johnson v. Siegel* (2000) 84 Cal.App.4th 1087, 1095.)

Given plaintiff's contention that she was misled into agreeing to arbitration when defendants already had a plan to terminate her employment and only delayed their execution until she agreed to arbitration, we conclude that this issue falls within the scope of the trial court's duties.

Urging us to affirm, plaintiff argues that the trial court's order was based not just upon a finding of fraud in the inducement; rather, as set forth in her notice of ruling, to which defendants did not object, the trial court also denied defendants' motion on the ground that the agreements were unconscionable.[2] We do not agree with plaintiff that her notice of ruling trumps the trial court's minute order. "A notice of ruling is not an order; an order is a document which contains a direction by the court

---

[2]     Defendants made this issue difficult by not providing us with a copy of a transcript of the hearing on their motion. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.)

10

that a party take or refrain from action, or that certain relief is granted or not granted [citations] and which is either entered in the court's permanent minutes or signed by the judge and stamped 'filed.' [Citations.]" (*Shpiller v. Harry C's Redlands* (1993) 13 Cal.App.4th 1177, 1179.) "In the event of any discrepancy between the two [order and notice of ruling], the order is the governing document. Therefore, if an issue arises as to what action was taken by the court, refer to the appropriate formal or minute order (and supply copies thereof if appropriate), not to the notice of ruling." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 9:320.4a, p. 9(I)-141.)

It follows that we reject plaintiff's contention on appeal that the trial court denied defendants' motion on the ground that the agreements were unconscionable.[3] And we express no opinion on whether the agreements are in fact unconscionable.

Plaintiff further relies upon the doctrines of fraud in the execution and equitable estoppel in support of the trial court's order. But plaintiff did not raise these theories below, and the trial court did not make any findings vis-à-vis these theories. It is well-established "that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court,

---

[3]     Plaintiff's claim of unconscionability may be wrapped up in her claim of fraud in the inducement. For example, she may have evidence of oppression, namely whether she was forced to agree to arbitration in order to commence or maintain her employment with Goldline. The trial court can sort these issues out at the evidentiary hearing.

11

but manifestly unjust to the opposing litigant." (*Ernst v. Searle* (1933) 218 Cal. 233, 240–241.) While we have discretion to consider new theories on appeal, we only do so when that theory presents questions of law based on undisputed facts. (*Vasquez v. SOLO 1 Kustoms, Inc.* (2018) 27 Cal.App.5th 84, 96.) Because the theories of fraud in the execution and equitable estoppel necessarily turn upon disputed facts, we decline to consider these theories raised for the first time on appeal.

## DISPOSITION

The order is reversed. The matter is remanded for an evidentiary hearing on defendants' motion. Parties to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT


12